UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAZALE ASHBY, | : |
|     Plaintiff, | : |
| | : |
| v. | :     No. 3:19-cv-1370 (SRU) |
| | : |
| ANGEL QUIROS, et al., | : |
|     Defendants. | : |

## **INITIAL REVIEW ORDER**

On September 4, 2019, Lazale Ashby ("Ashby"), an inmate currently confined at the Northern Correctional Institution ("NCI") in Connecticut, brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 challenging his conditions of confinement pursuant to the United States Constitution's Eighth Amendment prohibition against cruel and unusual punishment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and the Ex Post Facto and Bill of Attainder Clauses of Article I, Section 10. Compl., Doc. No. 1.[1] Ashby's complaint brings suit against former and current prison officials, in their individual and official capacities, Angel Quiros, Scott Semple, James Dzurenda, Leo Arnone, Theresa Lantz, Brian Murphy, Edward Maldonado, William Mulligan, William Faneouf,[2] Nick Rodriguez, Anne Cournoyer**,** Jeffrey McGill, Suzanne Ducate**,** Richard Furey, Mark Frayne, Gerard Gagne, and Giuliana Mudano.[3] Ashby also describes Robert Pettinger, a psychiatrist retained by NCI, as

---

[1] Ashby's complaint is missing pages 5, 9, and 10, which likely contain descriptions of defendants Arnone, Cournoyer, McGill, Mudano, and Ducate, who are either former or current prison officials at NCI or DOC. I may take judicial notice of relevant matters of public record. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *see also Coleman v. Blanchette*, 2012 WL 3822022, at *1 (D. Conn. Sept. 24, 2012) (describing Ducate as principal psychiatrist for DOC); "About Us," available at https://portal.ct.gov/DOC (listing current and former DOC Commissioners and wardens of NCI).

[2] Ashby may be referring to William Faneuff, who has served as a warden for DOC. *See* "Hartford Correctional Center," available at https://portal.ct.gov/DOC/Facility/Hartford-CC.

[3] According to the State of Connecticut Department of Correction website, Lantz served as Commissioner of DOC from 2003–09; Arnone served as the Commissioner from 2010–13; Dzurenda served as the Commissioner from 2013–14; Semple served as Commissioner from 2014–18; Brian Murphy served as Deputy Commissioner from

a defendant even though Ashby does not list Pettinger in the case caption. *Id.* at ¶ 23. Ashby seeks injunctive relief and compensatory and punitive damages. For the following reasons, I conclude that Ashby has stated plausible violations of the Eighth Amendment, Fourteenth Amendment Due Process and Equal Protection Clauses, and Ex Post Facto and Bill of Attainder Clauses of Article I, Section 10. However, I will dismiss claims based on allegations that are barred by the relevant statute of limitations.

## I.     Complaint

Ashby is a 34-year old prisoner who has been in solitary confinement at NCI since 2004. Compl., Doc. No. 1, at ¶¶ 5, 97. He is classified as an inmate with mental illness. *Id.* at ¶ 26.

On September 3, 2003, Ashby was arrested and charged with felony murder. *Id.* at ¶ 29. Defendants Lantz, Murphy, and Ducate transferred Ashby to NCI as a pretrial detainee on October 20, 2004. *Id.* at ¶ 41. He alleges that NCI is "designed and created to punish and house inmates by putting them in solitary confinement." *Id.* at ¶ 47. At NCI, defendants Lantz, Murphy, Ducate, and Furey knew Ashby was a pretrial detainee with mental health issues but placed him in Chronic Discipline Restrictive Housing without affording him a pre- or post-placement hearing. *Id.* at ¶¶ 51–59. Ashby completed the Chronic Discipline Program. *Id.* at ¶ 60.

Lantz, Murphy, Ducate, and Furey placed Ashby in the Administrative Segregation Program at NCI without affording him a pre- or post-deprivation hearing. *Id.* at ¶¶ 62–63. After completing the Administrative Segregation Program, defendants Lantz, Murphy, Ducate, and

---

2003–09; Dzurenda served as Deputy Commissioner from 2010–13; Semple served as Deputy Commissioner from 2013–2014; McGill served as NCI Warden from 2006–09; Angel Quiros served as NCI Warden from 2009–11; Maldonado served as NCI Warden from 2011–14; Cournoyer served as Warden from 2014–16; William Mulligan served as NCI Warden from 2016–17; Rodriguez served as NCI Warden from 2017–19; and Mudano is the current NCI Warden. *See* "Commissioners," available at https://portal.ct.gov/DOC/History/History-Commissioners; "Deputy Commissioners," available at https://portal.ct.gov/DOC/History/History-Deputy-Commissioners; "Northern Correctional Institution," available at https://portal.ct.gov/DOC/Facility/Northern-CI.

Furey did not allow Ashby to go into general population but made him stay in restrictive housing on "Extended Review" or "Special Needs" status. *Id.* at ¶¶ 67–72. Ashby did not receive a hearing with regard to that placement. *Id.* at ¶ 71.

Ashby was found guilty on two counts of capital felony murder in 2007, and he received a sentence of the death penalty in 2008. *Id.* at ¶¶ 74–75, 109. He was then sent to death row restrictive housing solitary confinement at NCI. *Id.* at ¶ 74–75. Ashby alleges that his mental health deteriorated in death row restrictive housing and that defendants Murphy, Frayne, Gagne and Pettinger ignored his requests for help. *Id.* at ¶¶ 77, 90. He asserts that defendants Lantz, Murphy, Ducate, Furey, Frayne, Gagne, Pettinger, McGill, Maldonado, Quiros, Semple, Dzurenda, Arnone, Mulligan, Faneouf, Cournoyer, and Rodriguez failed to hire sufficient staff to provide adequate treatment to mentally ill inmates. *Id.* at ¶ 94.

On April 25, 2012, Connecticut enacted a prospective repeal of the death penalty, now codified at Connecticut General Statutes § 18-10b(a).[4] *Id.* at ¶ 112. That statute directs the Commissioner to "place an inmate on special circumstances high security status and house the inmate in administrative segregation until a reclassification process is completed[,]" and it applies to prisoners who had been sentenced to death prior to April 25, 2012, and whose sentences were either "(A) reduced to a sentence of life imprisonment without the possibility of release by a court of competent jurisdiction, or (B) commuted to a sentence of life imprisonment without the possibility of release." *Id.* at ¶ 113, Conn. Gen. Stat. § 18-10b(a), Ex. Z to Compl., Doc. No. 1. Ashby alleges that the minimum conditions set forth in Section 18-10b require solitary confinement and extreme isolation, elements that were not included as part of the statutory penalty for capital felony murder when he committed it. *Id.* at ¶ 114.

---

[4] *See Webb v. Arnone*, 2018 WL 3651333, at *1 (D. Conn. Aug. 1, 2018) (discussing Section 18-10b(a)).

3

On June 20, 2018, Ashby was resentenced to life without possibility of release. *Id.* at ¶ 119. Ashby was then placed on "special circumstances high security" status. *Id.* at ¶ 123. Ashby alleges that defendants Semple, Maldonado, Faneouf, Dzurenda, Quiros, Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano continued to place him on "special circumstances high security" status despite his requests and grievances asserting that the imposition of Section 18-10b was unconstitutional. *Id.* at ¶ 123.

Ashby alleges that he has exhausted his administrative remedies. *Id.* at ¶ 25.

In his first count, Ashby alleges violation of the Fourteenth and Eighth Amendments based on indefinite punishment of solitary confinement. *Id.* at ¶¶ 148–58. Ashby alleges, *inter alia*, that his permanent confinement—with its extreme social isolation and lack of adequate medical and mental health care, sunlight, and exercise—constitutes deprivation of basic human needs and imposes serious psychological and physical injury, pain, and suffering. *Id.* at ¶¶ 150–52.

In his second count, Ashby alleges violation of his Fourteenth Amendment procedural due process rights based both on defendants' failure to conduct "meaningful" reviews that were required to support his continued confinement in restrictive housing and on their failure to provide notice of what Asbhy could "do to be removed from solitary confinement." *Id.* at ¶¶ 163–64.

In his third count, Ashby asserts a violation of the Fourteenth Amendment's Equal Protection Clause. He alleges that two similarly situated death row defendants—Eduardo Santiago and Terry Johnson—were transferred to a lower-security Connecticut prison.[5] *Id.* at ¶ 168.

---

[5] Santiago and Johnson were transferred to general population in 2014 and 2013, respectively. *Reynolds v Arnone*, 2019 WL 4039015, at *18 (D. Conn. Aug. 27, 2019).

4

In his fourth and fifth counts, Ashby alleges that enactment of Section 18-10b and imposition of its punishment violates the Ex Post Facto and Bill of Attainder Clauses of Article 1, Section 10. *Id.* at ¶¶ 172–85.

## II.     Analysis

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

In *Reynolds v. Arnone*, another case asserted by an inmate who had been placed on death row and "special circumstances high security" status, I considered similar alleged violations of the Eighth Amendment, Fourteenth Amendment's Due Process and Equal Protection Clauses, and Article 1, Section 10's Ex Post Fact and Bill of Attainder Clauses. 2019 WL 4039015, at *2 (D. Conn. Aug. 27, 2019). In ruling on cross motions for summary judgment, I concluded that

Reynolds was entitled to damages and declaratory and injunctive relief on those claims.[6] Upon review of the instant complaint, I note that Ashby's allegations generally parallel the allegations of the operative amended complaint in *Reynolds*. *See* No. 3:13-cv-1465 (SRU), Doc. No. 71. Unlike Reynolds, however, Ashby also asserts allegations based on conduct commencing with his confinement at NCI as a pretrial detainee in 2004. Accordingly, I must consider whether Ashby has alleged plausible constitutional violations and whether the relevant three-year statute of limitations bars any of his claims. Although the statute of limitations represents an affirmative defense, I may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is barred by the statute of limitations. *See, e.g.*, *Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *Reese v. Lightner*, 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases).

### A. Conditions of Confinement

Ashby alleges violation of the Eighth and Fourteenth Amendments based on "deprivation of basic human need" due to "the cumulative effect of prolonged and now permanent confinement, along with denial of the possibility of re-classification or relocation from NCI, the deprivation of adequate medical and mental health care, the denial of sunlight and exercise, and the extreme social isolation at NCI . . . ." Compl., Doc. No. 1, at ¶ 150.

To the extent that Ashby asserts a claim based on his conditions of confinement while he was a pretrial detainee, such claim is governed by the Fourteenth Amendment's Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In contrast, the Eighth Amendment governs a sentenced prisoner's conditions of confinement claim. *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).

---

[6] Because I held that Conn. Gen. Stat. §18-10b constituted a bill of attainder in violation of Article I, Section 10, I did not reach the issue whether the statute also violates the Ex Post Facto Clause. *Id*. at *29.

An unconstitutional conditions of confinement claim requires a plaintiff to show that the conditions under which he was confined constitute a "denial of the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). To prevail on either his Eighth Amendment or Fourteenth Amendment claim, plaintiff must first satisfy an objective element that the conditions of confinement, "either alone or in combination, pose an unreasonable risk of serious damage to his health . . . ." *Darnell*, 849 F.3d at 30. The Fourteenth and Eighth Amendments differ with respect to the second element required to establish a conditions of confinement claim. *Id.* at 32. Under the Fourteenth Amendment, a pretrial detainee must establish a "mens rea" element that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Under the Eighth Amendment, a plaintiff must satisfy a subjective element: that the defendants "acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 834)).

The District Court of Connecticut applies the three-year statute of limitations set forth in Connecticut General Statutes § 52-577 to claims brought under 42 U.S.C. § 1983. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994); Conn. Gen. Stat. § 52-577. Federal law controls when a cause of action accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, a cause of action accrues 'when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action.'" *M.D. Southington Bd. Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (quoting *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993)).

The statute of limitations does not bar claims if the continuing violation doctrine applies to extend the limitations period. *See Reese*, 2019 WL 2176342, at *4. The continuing violation doctrine is limited "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment," and, when the doctrine is applicable, "the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim." *Harnage v. Torres*, 665 F. App'x 82, 84 (2d Cir. 2016) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)) (summary order) (internal citations omitted). As the Second Circuit explained, the continuing violation doctrine applies to claims "composed of a series of separate acts" that together constitute one unconstitutional or unlawful practice, but not to "discrete unlawful acts" even where such acts are part of a "serial violation." *Gonzalez*, 802 F.3d at 220. A plaintiff "must allege both the existence of an ongoing policy and some non-time barred acts taken in furtherance of that policy." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). The continuing violation doctrine applies in accordance with the "characteristics of the claim" rather than the "source of the right of action." *Gonzalez*, 802 F.3d at 221.

Ashby's Fourteenth Amendment conditions of confinement claim must be dismissed as barred by the statute of limitations. Ashby was convicted in 2007 and sentenced in 2008. *See* Compl., Doc. No. 1, at ¶¶ 74–75. Ashby's confinement in restrictive or administrative housing as a pretrial detainee is distinct from his confinement as a death row or "special circumstances high security" inmate. Prior to his sentencing, Ashby was not subjected to permanent confinement and isolation without the possibility of release. Further, as discussed, a Fourteenth Amendment conditions of confinement claim is governed by standards that differ from an Eighth Amendment claim. *See Darnell*, 849 F.3d at 35. Ashby cannot allege any non-time barred acts taken in furtherance of his conditions in pretrial detention at NCI because that condition of

8

confinement ended when he was transferred to death row restrictive housing solitary confinement in 2008. Compl., Doc. No. 1, at ¶ 75.

However, Ashby has set forth a plausible Eighth Amendment violation based on his confinement as a "special circumstances high security" status inmate. That claim does not implicate the statute of limitations because Ashby's "special circumstances high security" placement occurred on June 22, 2018. In *Reynolds*, I held that Reynolds's prolonged confinement as a "special circumstances" inmate in isolated, restrictive housing satisfied the Eighth Amendment's objective element as violating contemporary standards of decency; and I held that the prison officials' demonstrated deliberate indifference satisfied the subjective element of an Eighth Amendment claim. 2019 WL 4039015, at *5–10. The same reasoning applies here.

B. **Procedural Due Process**

Ashby alleges that the duration and conditions of his confinement deprive him of a constitutionally protected liberty interest and that defendants have failed to afford him his procedural due process rights. Compl., Doc. No. 1, at ¶¶ 159–66. He asserts procedural due process violations commencing with his confinement as a pretrial detainee to his current status as a "special circumstances high security" inmate. He claims that defendants have failed to conduct personal classification interviews, failed to complete written evaluations for years at a time, failed to provide him with notice of how he can be removed from solitary confinement, and failed to conduct review of his current placement as a "special circumstance high risk" inmate. *Id.* at ¶¶163–64.

To assert a procedural due process claim, Ashby must show that he had a protected liberty interest and that the defendants deprived him of the interest without affording him

sufficient due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Reynolds*, I held that Reynolds had a liberty interest in remaining free from permanent isolation during his life sentence as a "special circumstances" inmate; and I held that defendants had violated his due process rights by failing to provide him procedural protections prior to placing him on "special circumstances" status. 2019 WL 4039015, at *14–17.

Here, Ashby has stated plausible claims of Fourteenth Amendment procedural due process violations in connection with his placement in segregated and restrictive housing.

C. **Equal Protection**

Ashby sets forth that defendants violated the Fourteenth Amendment Equal Protection Clause by treating him differently from two other inmates—Eduardo Santiago and Terry Johnson—who had been sentenced to death row but who were not subject to "special circumstances high security conditions" after invalidation of their death sentences. Compl., Doc. No. 1, at ¶¶ 167–71.

"To prevail on an Equal Protection claim, [a plaintiff] must prove that he was treated differently from other similarly situated individuals and the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Reynolds*, 2019 WL 4039015, at *17 (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). In *Reynolds*, I considered whether Reynolds had been intentionally treated differently from others similarly situated without a rational basis for the differential treatment. *Id.* I concluded that Santiago and Terry were sufficiently similarly situated to Reynolds to serve as competent comparators and that there was no rational basis for Reynolds's more restrictive conditions. *Id.* at *17–19.

10

I will permit Ashby's equal protection claim to proceed even though the alleged comparators were transferred to the general population at MacDougall-Walker Correction Institution in 2013 and 2014. *Id.* at *18. Here, the continuing violation doctrine applies because Ashby's equal protection claim did not accrue until his resentencing and placement in "special circumstances high security" status in June 2018.

### D. Article 1, Section 10

In his fourth and fifth causes of action, Ashby alleges that Conn. Gen. Stat. § 18-10b violates Article I, Section 10 as a bill of attainder and an Ex Post Facto Law.

"[A] constitutionally proscribed bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" *Consolidated Edison Co. of New York v. Pataki,* 292 F.3d 338, 346 (2d Cir. 2002) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)). The Ex Post Facto Clause prohibits legislative action that "imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981).

In support of his fourth and fifth causes of action, Ashby alleges: In 2018, he was resentenced and placed on "special circumstances high security status" in accordance with Section 18-10b; defendants implemented Section 18-10b as a means of retribution against him and other members of an identifiable group; and Section 18-10b imposes additional punishment to inmates who had already been sentenced to death. Compl., Doc. No. 1, at ¶¶ 172–83.

In *Reynolds*, I held that Section 18-10b constituted a bill of attainder in violation of Article I, Section 10, and I did not reach the issue of whether the statute also violates the Ex Post Facto Clause. *Reynolds*, 2019 WL 4039015, at *29. I conclude that Ashby's fourth and fifth

causes of action have plausibly stated violations of Article I, Section 10.

E. **Involvement of Defendants**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Ashby alleges the involvement of Semple, Maldonado, Faneouf, Dzurenda, Quiros, Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano in his placement and confinement as a death row and "special circumstances high security" status inmate pursuant to Section 18-10b. *See* Compl., Doc. No. 1, at ¶¶ 94, 123. Accordingly, his claims of violations of the Eighth Amendment, Procedural Due Process Clause, Equal Protection Clause, and Article I, Section 10 may proceed against those defendants.

I dismiss Ashby's claims based on Fourteenth Amendment conditions of confinement and Procedural Due Process violations that allegedly occurred when he was a pre-trial detainee; Ashby has alleged that defendants Lantz, Murphy, Ducate and Furey were involved in those constitutional violations. *Id.* at ¶¶ 40–69. Further, because defendant Lantz served as Commissioner of DOC between 2003 and 2009, she could not have had any involvement in the remaining actionable claims.[7] I dismiss all the claims against her.

Ashby's complaint also names defendants Murphy, Ducate, Furey, Frayne, Gagne, Pettinger, and McGill as involved in constitutional violations that allegedly occurred during his incarceration as a sentenced inmate. *See id.* at ¶ 90–94. Ashby has not set forth dates or factual allegations indicating when those defendants were involved in the constitutional violations

---

[7]*See* "Commissioners," available at https://portal.ct.gov/DOC/History/History-Commissioners.

12

alleged to have occurred during his incarceration as a sentenced inmate. I cannot determine whether defendants Murphy, Ducate, Furey, Frayne, Gagne, Pettinger, and McGill had any involvement in the remaining claims. I dismiss the claims against those defendants without prejudice and permit Ashby leave to file an amended complaint to allege when and how those defendants were involved in the asserted constitutional violations that allegedly occurred during his incarceration as a sentenced inmate. Ashby should ensure that he has filed all pages of the complaint and that all defendants are named in the case caption.

**ORDER**

The Court enters the following orders:

(1) The case shall proceed on the plausible Eighth Amendment, Fourteenth Amendment Procedural Due Process and Equal Protection, and Article I, Section 10 claims against defendants Semple, Maldonado, Faneouf, Dzurenda, Quiros, Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano. Ashby's pretrial detainee Fourteenth Amendment conditions of confinement and Procedural Due Process claims against defendants Lantz, Murphy, Ducate and Furey are DISMISSED with prejudice. All claims against defendant Lantz are DISMISSED with prejudice.

All claims concerning constitutional violations alleged to have occurred during Ashby's incarceration as a sentenced inmate against defendants Murphy, Ducate, Furey, Frayne, Gagne, Pettinger, and McGill are DISMISSED without prejudice.

Ashby may file a complaint within **thirty (30) days** from the date of this Order to cure the factual deficiencies identified in the Initial Review Order. The amended complaint should include all Eighth Amendment, Procedural Due Process Clause, Equal Protection Clause, and Article I, Section 10 claims against defendants Semple, Maldonado, Faneouf, Dzurenda, Quiros,

13

Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano that I have determined should proceed. Failure to file an amended complaint within **thirty (30)** days will result in dismissal of the claims against defendants Murphy, Ducate, Furey, Frayne, Pettinger, Gagne, and McGill with prejudice.

(2) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Semple, Maldonado, Faneouf (likely Faneuff), Dzurenda, Quiros, Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and file a return of service within **thirty (30) days** from the date of this order.

(3) The clerk shall verify the current work addresses for defendants Semple, Maldonado, Faneouf (likely Faneuff), Dzurenda, Quiros, Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) Defendants Semple, Maldonado, Faneouf (likely Faneuff), Dzurenda, Quiros, Arnone, Mulligan, Rodriguez, Cournoyer, and Mudano shall file their response to the complaint, either an

answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut's "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Ashby changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Ashby must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough just to put the new address on a letter without indicating that it is a new address. If Ashby has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

It is so ordered.

Dated at Bridgeport, Connecticut, this 3d day of February 2020.

    /s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge